IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>  v.<br><br>NETGEAR, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 21-1119-MN-CJB<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) |

**DEFENDANT NETGEAR, INC.'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS WSOU'S AMENDED COMPLAINT**

<div style="display:flex">

OF COUNSEL:

Amr O. Aly
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Lisa M. Schoedel
Yusuf Esat
Mitchell L. Denti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
(312) 222-9350

January 21, 2022

</div>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. *ALICE* STEP ONE: THE '171 PATENT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA. ............................................................................................................ 2

    A. The Claims Are Directed To The Abstract Idea Of Controlling Access To Resources, And WSOU's Opposition Fails To Address NETGEAR's Analysis.................................................................................................................... 2

    B. The Claims Are Not Directed To Distributed Systems And Methods.................... 3

    C. The Claims Are Not Directed To New Wireless Access Points. ............................ 3

    D. Using Social Networking Group Membership Is Not New. ................................... 4

    E. WSOU's Case Law Is Distinguishable. ................................................................... 5

III. *ALICE* STEP TWO: THE '171 PATENT CLAIMS DO NOT HAVE AN INVENTIVE CONCEPT THAT TRANSFORMS THEM INTO A PATENTABLE INVENTION. ......................................................................................... 6

IV. IT IS APPROPRIATE TO RESOLVE THIS CASE ON A MOTION TO DISMISS ............................................................................................................................... 7

V. CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................................... passim

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018) .................................................................................. 16

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) .................................................................................... 6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) .................................................................................... 7

*CosmoKey Solutions GmbH & Co. v. Duo Security LLC*,
    15 F. 4th 1091 (Fed. Cir. 2021) .................................................................................... 6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 Fed. App'x. 529 (Fed. Cir. 2020) ...................................................................... 1, 2

*Enfish, LLC. v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .................................................................................... 5

*Ericsson Inc. v. TCL Comm'n Tech. Holdings, Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) ............................................................................ 1, 2, 3

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) .................................................................................... 3

*Finjan Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) .................................................................................... 5

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
    72 F. Supp. 3d 521 (D. Del. 2014) ............................................................................... 4

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) ...................................................................................... 4

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. App'x 534 (Fed. Cir. 2021) ........................................................................... 3

*In re Mobile Telecomm. Techs., LLC*,
    C.A. No. 16-699-LPS-CJB, 2017 WL 1053099 (D. Del. Mar. 20, 2017) .................... 4

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 Fed. App'x 1014 (Fed. Cir. 2017) ...................................................................... 1, 2

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)...................................................................................................6

**Statutes**

35 U.S.C. § 101 .......................................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................4

**I.      INTRODUCTION**

As a result of the unusual procedural history in this case, NETGEAR anticipated many of WSOU's objections when drafting its opening brief supporting its motion to dismiss WSOU's Amended Complaint. D.I. 33. NETGEAR thus addressed, in its second opening brief, each argument that WSOU made in its first opposition brief (D.I. 25). In addition to addressing the 12 new paragraphs in WSOU's Amended Complaint (D.I. 24), NETGEAR's second opening brief: (1) addresses all the claims of the '171 patent, not just the ones WSOU asserted; (2) provides additional comparisons of the '171 patent claims to those discussed in *Ericsson*, *Prism*, and *Dropbox*; (3) establishes that the '171 patent claims are not directed to distributed systems and methods, or new wireless access points; (4) demonstrates that using social networking group membership for access control is not new; and (5) distinguishes WSOU's case law.

Despite NETGEAR's efforts in its opening brief to preemptively address WSOU's expected opposition to its second motion to dismiss, WSOU's second opposition brief remains largely unchanged from its first. *Compare* D.I. 25 *with* D.I. 45. In its second opposition, WSOU merely adds two new paragraphs, deletes its arguments regarding the unasserted claims, and makes non-substantial edits.[1] These revisions, however, fail to raise any factual disputes. As a result, discovery and claim construction are unnecessary to decide whether the '171 patent claims are ineligible, and NETGEAR's motion is ripe.

---

[1]    WSOU's two new paragraphs can be found on pages 15-16 starting with "*Third*" and "*Fourth*." D.I. 45 at 15-16. These paragraphs are responsive to NETGEAR's arguments that the '171 patent claims are not directed to distributed systems or methods (D.I. 33 at 12-13, V.A.3) or new wireless access points (*id.* at 13-14, V.A.4).

## II. *ALICE* STEP ONE: THE '171 PATENT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA.

In its opening brief, NETGEAR makes six *Alice* step one arguments. NETGEAR addresses WSOU's responses to each of these arguments below.

### A. The Claims Are Directed To The Abstract Idea Of Controlling Access To Resources, And WSOU's Opposition Fails To Address NETGEAR's Analysis.

First, NETGEAR explains how the '171 patent claims are directed to the abstract idea of controlling access to resources like the claims found in *Ericsson*, *Prism*, and *Dropbox*. D.I. 33 at 8-11. Despite NETGEAR's additional discussion regarding those cases, WSOU still fails to substantively address these cases. Instead, WSOU maintains its attorney argument that "[t]he cases that Netgear primarily relies upon are distinguishable" (D.I. 45 at 15, n.6), and fails to provide any analysis of how the claim language of the '171 patent materially differs from the claim language found to be directed to the abstract idea of controlling access in *Ericsson, Prism,* and *Dropbox*.

This failure to substantively address *Ericsson, Prism,* and *Dropbox* is significant as NETGEAR's second *Alice* step one argument specifically attacks this failure of WSOU's first opposition brief. D.I. 33 at 11. WSOU also continues to argue that "human minds and librarians are not capable of maintaining social networking information from various social networks and associating such information with hundreds or thousands of users and their devices." D.I. 45 at 15.[2] Yet, it fails to address NETGEAR's response that this argument "is untethered to the claim

---

[2] It is not clear why "human minds and librarians" are "not capable" of maintaining social networking information from various sites, but to the extent WSOU's argument is that the volume or number of users somehow is a distinguishing factor, there is no reason why "librarians" could not record that information via pen and paper and look up such information. Thus, WSOU's argument also fails because, as the Federal Circuit has explained, processes "that can be performed in the human mind, or by a human using a pen and paper . . . have repeatedly [been] found unpatentable." *Ericsson Inc. v. TCL Comm'n Tech. Holdings, Ltd.,* 955 F.3d 1317, 1327 (Fed. Cir. 2020) (internal quotes omitted).

language." D.I. 33 at 11.  WSOU also ignores NETGEAR's cites to *Fairwarning* and *iLife Techs*. *Id*.  Instead, WSOU provides an attorney argument regarding "Netgear's fanciful analogies," D.I. 45 at 15, when in fact, these are the very analogies used by the Federal Circuit.  *See Ericsson*, 955 F.3d at 1327 (providing analogies of how "[c]ontrolling access to resources" is an "idea [that] long predates [the asserted patent] and is pervasive in human activity").  WSOU's failure to address NETGEAR's second *Alice* step one arguments supports NETGEAR's analysis that the claims of the '171 patent are directed to the abstract idea of controlling access to resources.

        **B.**       **The Claims Are Not Directed To Distributed Systems And Methods.**

NETGEAR's third argument is that, despite WSOU's assertion to the contrary, the claims of the '171 patent are not directed to distributed systems and methods.  D.I. 33 at 12-13.  In its first new paragraph, WSOU states that NETGEAR's argument "is incorrect for the reasons set forth herein [on pages 5-9 and 11-14] and in WSOU's initial opposition brief [on pages 5-9 and 11-19]."  D.I. 45 at 15.  While it is unclear what on these 23 pages WSOU is referring to specifically, WSOU never explains which of the '171 patent claim limitations are directed "to multiple network devices in a network communicating with each other," i.e., a distributed system.  D.I. 33 at 12.  Indeed, the phrase "distributed system" does not appear anywhere in the '171 patent specification, nor in the claims.

        **C.**       **The Claims Are Not Directed To New Wireless Access Points.**

NETGEAR's fourth argument is that the claims are not directed to new wireless access points.  *Id*. at 13-14.  In its second new paragraph, WSOU states that the wireless access points are new "[a]s stated herein."  D.I. 45 at 16.  Despite this vagueness, one can find that WSOU still argues that "the '171 patent claims teach new wireless access point(s) that includes an access control platform."  *Id*. at 12.  WSOU, however, never explains how a wireless access point is

3

modified to include an access control platform. Nor does WSOU respond to NETGEAR's arguments, including an annotated copy of Figure 1 of the '171 patent, demonstrating that the '171 patent describes that the access control platform is a separate device from the wireless access point. D.I. 33 at 13.

### D. Using Social Networking Group Membership Is Not New.

NETGEAR's fifth argument is that using social networking group membership for access control is not new. *Id*. at 14. NETGEAR supports this argument with the '171 patent prosecution history as the Patent Office previously found that the prior art reference "Nath" disclosed "using social networking group membership to control access." *Id*. WSOU responds with two futile arguments.

First, WSOU argues that NETGEAR cannot rely on the prosecution history. D.I. 45 at 16. WSOU is wrong. As NETGEAR describes, prosecution histories are public records that may be considered "[i]n deciding a Rule 12(b)(6) motion." D.I. 33 at 14; *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)). WSOU does not dispute this holding. Instead, WSOU cites to a different case, *In re Mobile Telecomm. Techs.*, for support, but that case says nothing about the use of a patent's prosecution history as evidence in deciding a Rule 12(b)(6) motion. D.I. 45 at 16.

Second, WSOU argues that "the Notice of Allowability affirms … that the '171 patent claims are novel in view of the prior art." *Id*. As NETGEAR describes, the '171 patent claims were only allowed after "the applicant amended the claims to include resource characteristic limitations." D.I. 33 at 14. The Notice of Allowability supports NETGEAR's analysis.

4

In the "Allowable Subject Matter" section, the Patent Office explains its reasons for allowance. "As seen in the prosecution history Nath et al. while strongly field related does not anticipate 'controlling access to resources based on characteristics associated with the resources.'" D.I. 46-6 at 3. While perhaps inartfully worded, the Patent Office explains that it is allowing the claims because Nath did not teach the resource characteristic limitations: the claim limitation beginning with "(b)" and the wherein clause found in claims 1 and 10 of the '171 patent.[3] *See* D.I. 34-1 at 41 and 44 (showing the added limitations with underlining). Without these additional limitations, the Patent Office found that Nath anticipated the claims including the limitation directed to controlling access to resources based on membership to a social networking group.[4] *Id*. at 26. Thus, despite WSOU's assertion to the contrary, the prosecution history demonstrates that using social networking group membership for access control is not new.

### E. WSOU's Case Law Is Distinguishable.

NETGEAR's sixth argument is that WSOU's case law from its first opposition brief is distinguishable. D.I. 33 at 15-16. In particular, NETGEAR explains why *Finjan*, *Enfish*, *Ancora*,

---

[3] For claims 1 and 10, limitation "(b)" is "one or more characteristics associated with the one or more resources" and the wherein clause is "wherein the one or more resources include one or more wireless access points, and the one or more characteristics include a number of users accessing the one or more wireless access points, a traffic load associated with the one or more wireless access points, or a combination thereof." D.I. 46-1 at 25:57-26:13, 27:5-31.

[4] For claim 1, the Patent Office found that Nath disclosed: "A method comprising facilitating a processing of and/or processing (1) data and/or (2) information and/or (3) at least one signal, the (1) data and/or (2) information and/or (3) at least one signal based, at least in part, on the following: one or more resources associated with at least one user, at least one device associated with the at least one user, or a combination thereof; a processing of social networking information associated with the at least one user, the at least one device, or a combination thereof to determine one or more social networking groups; and a controlling of access to the one or more resources for one or more other users, one or more other devices associated with the one or more other users, or a combination thereof based, at least in part, on membership in the one or more social networking groups." D.I. 34-1 at 26.

5

and *SRI* do not support WSOU's opposition. *Id*. In response, WSOU only makes non-substantial changes to its original arguments.[5] D.I. 45 at 11-13. WSOU fails to show how the '171 patent claims include limitations to a new file type or data structure, or how these claims improve computer functionality or computer networks. *Id*.

In summary, WSOU's *Alice* step one arguments fail to address many of NETGEAR's arguments that a motion to dismiss is appropriate at this stage in the proceedings and, to the extent that WSOU addresses some of NETGEAR's arguments, it simply relies on attorney arguments, which are insufficient to raise factual disputes.

### III. *ALICE* STEP TWO: THE '171 PATENT CLAIMS DO NOT HAVE AN INVENTIVE CONCEPT THAT TRANSFORMS THEM INTO A PATENTABLE INVENTION.

WSOU makes minimal changes to its *Alice* step two argument in its second opposition brief, despite NETGEAR having added a new section to its second opening brief describing how the claims of the '171 patent do not cover an improvement to a network. D.I. 33 at 18-19, V.B.2.

In this new section, NETGEAR distinguishes *CosmoKey* and *Bascom*, the two cases WSOU relies upon in its *Alice* step two argument. *Id*. In response, WSOU makes two attorney arguments. First, WSOU states that "Netgear's contentions to the contrary are inconsistent with its own statements and ignore the limitations." D.I. 45 at 18. Second, WSOU states that "Negear's [sic] attempts to distinguish these cases are plainly insufficient." *Id*. at 18, n.7. WSOU, however, fails to provide any explanation regarding how NETGEAR's analysis of *CosmoKey* and *Bascom* is inconsistent or insufficient.

Surprisingly, WSOU also fails to address NETGEAR's original *Alice* step two argument. D.I. 33 at 17-18. WSOU does not dispute that "the wireless access point is a standard networking

---

[5]  WSOU changed the *Finjan* parenthetical to include text from a deleted paragraph, moves the string cite into footnote 4, corrects grammatical errors, and makes wordsmithing changes. *Compare* D.I. 25 at 11-14 *with* D.I. 45 at 11-13.

hardware device that remains unchanged by performing access control" or that "the '171 patent describes that access control occurs separately from" that device. *Id*. at 17. After two opportunities to formulate a response, WSOU again defaults to attorney argument that "Netgear's analysis is insufficient and fails to account for novel limitations." D.I. 45 at 19. Attorney arguments, however, are insufficient to raise any genuine factual disputes.

### IV. IT IS APPROPRIATE TO RESOLVE THIS CASE ON A MOTION TO DISMISS.

WSOU's final argument is that claim construction "is necessary prior to deciding this motion." *Id*. at 20. To support this argument, WSOU provides a construction of a term that uses the exact same language as the term itself.[6] *Id*. Instead of providing a proposed construction for this term, WSOU improperly adds a new claim limitation "by an access control platform" to the claims. *Id*. Even if proper, WSOU does not explain how its proposed construction would impact the Court's 35 U.S.C. § 101 analysis, nor does WSOU provide "proposed expert testimony that would change the § 101 analysis." *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (listing cases where the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced").

Moreover, WSOU's attorney argument regarding "Netgear's internally inconsistent positions" fails to show that there is claim construction dispute between the parties. D.I. 45 at 20. Indeed, WSOU's proposed construction shows that it agrees with Netgear's *consistent* position that the specification of the '171 patent discloses an access control platform, but the claims do not.

---

[6] WSOU argues that the term "cause, at least in part, a controlling of access to the one or more resources for one or more other users" should be construed as "cause, at least in part, a controlling [of] access to the one or more resources for one or more other users" with an access control platform performing this step. *Id*.

7

D.I. 33 at 12. Without a meaningful claim construction dispute, this is one of the many cases where it is appropriate to address ineligibility at the motion to dismiss stage.

## V. CONCLUSION

For the reasons set forth above, NETGEAR respectfully requests that this action be dismissed with prejudice because the '171 patent claims are ineligible to be patented under 35 U.S.C. § 101.

<div style="text-align:right">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

</div>

OF COUNSEL:

Amr O. Aly
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY  10036
(212) 891-1600

Lisa M. Schoedel
Yusuf Esat
Mitchell L. Denti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
(312) 222-9350

January 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 21, 2022, upon the following in the manner indicated:

| | |
|---|---|
| James M. Lennon, Esquire<br>DEVLIN LAW FIRM LLC<br>1526 Gilpin Avenue<br>Wilmington, DE  19806<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Jonathan K. Waldrop, Esquire<br>Darcy L. Jones, Esquire<br>Marcus A. Barber, Esquire<br>ThucMinh Nguyen, Esquire<br>John W. Downing, Esquire<br>Heather S. Kim, Esquire<br>KASOWITZ BENSON TORRES LLP<br>333 Twin Dolphin Drive, Suite 200<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Shelley Ivan, Esquire<br>Noah P. Dorman, Esquire<br>KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, NY  10019<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Paul G. Williams, Esquire<br>KASOWITZ BENSON TORRES LLP<br>1230 Peachtree Street, NE, Suite 2445 Atlanta, GA  30309<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)